DEPEW GILLEN RATHBUN & MCINTEER LC
8301 E. 21st Street North, Suite 450
Wichita, KS 67206-2936
Telephone: (316) 262-4000
Email: Randy@depewgillen.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEATHA D. LAWTON, individually and natural parent of the decedent Z.L. | )<br>)<br>)<br>) |
| Plaintiff, | ) |
| vs. | )   Case No. |
| | )<br>) |
| PARK VILLAGE COMMUNITY, LLC | )<br>) |
| Defendant. | )<br>) |

## COMPLAINT

COMES NOW the plaintiff, Leatha Lawton, in her individual capacity and as surviving mother of her deceased daughter Z. L., and for her cause of action against the defendant, alleges and states as follows:

1. The plaintiff is a resident of Sedgwick County, Kansas and is domiciled there. She brings this action on her own behalf and as surviving heir of her daughter, Z. L., who passed on February 2, 2021.

2. The defendant Park Village Community, LLC is a limited liability company authorized and existing under the laws of the state of Kansas. The

official mailing address of the defendant is Irene Levi, 26500 Agoura Rd 102-588 Calabasas, CA 91302.  On information and belief, the members of the LLC are all residents of the state of California and are all domiciled therein. The defendant can be served through its registered agent, Park Village Community, LLC, 130 S. Greenwich, Wichita, KS 67207.

3. This action involves a dispute between citizens of different states and the amount in controversy is in excess of $75,000.  Accordingly, this Court's jurisdiction is invoked under 28 U.S.C. § 1332.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district.

4. On September 25, 2020, Leatha Lawton entered into a "Manufactured Home Lease Agreement" with the defendant which was effective October 1, 2020.  The manufactured home was located at 130 S. Greenwich Road in Wichita, KS.  The rent was represented to be $475.00, broken down as $208.33 monthly as a "rent charge" plus a monthly "depreciation" charge of $266.67.  Ms. Lawton was responsible for payment of property taxes on the mobile home as well as trash removal and sanitary sewage charges.  Water bills were often in excess of $400.

5. On the same day, Ms. Lawton entered in a "Manufactured Home Space Lease Agreement" which provided Ms. Lawton with "Home space #321" plus parking, on a month-to-month basis for $325 monthly.

6. Ms. Lawton was required to accept the home in an "as is" condition and was required to make HVAC repairs, as well as repairs to the water heater and all appliances after the first 30 days of the lease. She was required to perform any repairs necessary on the home to keep it in good condition. These lease provisions violated the Kansas Residential Landlord Act.

7. Prior to signing the lease, the defendant represented that the home had been totally renovated throughout.

8. During the occupancy of the premises, Ms. Lawton's four children began to experience recurring respiratory conditions including apparent asthma symptoms. These conditions required a number of emergency room visits.

9. On the afternoon of January 31, 2021, the Sedgwick County EMS was dispatched to the plaintiff's home on the report of Z. L. collapsing in the front yard of the home. Z. L. had experienced two prior severe exacerbations of asthma in the last five years. She had been diagnosed with asthma in 2017.

10. Z. L. was transferred by EMS to the Wesley Medical Center. According to the medical records, she presented with a worsening of shortness of air associated with persistent coughing and an episode of decreased consciousness. She was admitted into the pediatric intensive care unit.

11. Z. L. was subsequently discharged from the hospital in the late afternoon of February 2, 2021 in stable condition.

12. That evening, several hours after discharge from the hospital, Z. L. again had a severe asthma attack and had no pulse. When the ambulance arrived, Ms. Lawton was performing compression CPR on her daughter. Z. L. was rushed to Wesley Medical Center again.

13. Z. L. was removed from life support and she passed on February 2, 2021 at 6:28 p.m. Physicians at the hospital inquired as to whether Z. L. was in a moldy environment. According to her death certificate, her cause of death was

> A. status asthmaticus,
> B. severe anoxic brain injury,
> C. acute hyper carbic respiratory failure and
> D. severe persistent asthma.

14. After Z. L.'s passing, one of Ms. Lawton's neighbors discovered water damaged building materials in several locations, including Z. L.'s bedroom. This led to the discovery of microbial/fungal growth in the home as set forth below.

15. On April 8, 2021, American Metropolitan Environmental, Inc. ("AMEI") did a limited pre-remediation survey of the rental premises. An inspection of the water heater closet revealed significant moisture damage. Visible mushroom type growths were visible protruding from the particle board subflooring. The ductwork in the home was contaminated with significant debris.

16. The dining area of the home had significant moisture damage and microbial/fungal growth from the sliding glass door that would not properly close. The defendant had promised to repair that when the premises were rented; however, once Ms. Lawton moved in, it refused to do so.

17. AMEI's inspection of the crawl space revealed the following:

- During the inspection of the crawlspace, it was observed that in the west end, beneath the master bathroom, the soil was saturated with visible ponding water.
- The inspection identified plumbing leaks from domestic water supply plumbing for the bathroom fixtures.
- During the inspection, a sewage odor was observed indicating a plumbing leak from a waste pipe.
- The inspection of the crawlspace beneath the master bathroom, east bathroom and northeast bedroom the observed fiberglass reinforced fabric to be significantly damaged and the fiberglass insulation dislodge laying the crawlspace floor exposing underside of subflooring, plumbing and supply air ductwork to weather.
- The inspection of the crawlspace identified the crossover flex ductwork that provides heated and cooled air to both sides of die manufacture home to be laying on the crawlspace floor and significantly with a visible very large hole.
- The inspection of the interior of the crossover ductwork (via the large hole) observed significant wet debris accumulation and evidence of animal intrusion. The large hole is greatly reducing airflow to the south side of the doublewide manufactured home.
- The inspection identified trapped water between the fiberglass reinforced fabric and the subflooring.

18. AMEI pulled both air samples and wipe samples in the home which disclosed elevated levels of the opportunistic molds Aspergillus and Penicillium as well as the toxigenic fungus Stachybotrys. Exposure to Stachybotrys causes runny nose, eye irritation, cough, congestion, fungal sinusitis, and aggravation of

asthma. All of these molds are considered potential human pathogens. Wipe samples found gross levels of Stachybotrys contamination (12,000,000 spores/cm$^2$.

19. Stachybotrys is commonly known as black mold and is very toxigenic. The CDC has confirmed that infants have died from pulmonary hemosiderosis following exposure to unusually high levels of Stachybotrys.

20. The high levels of toxic mold in the home contributed to the exacerbation of Z. L.'s asthma and ultimately to her death.

21. The defendant knew of the substandard condition of the mobile home it leased to the plaintiff. The plaintiff had made a number of complaints about the conditions and the defendant did nothing. The defendant violated its implied warranty of habitability.

22. Plaintiff, as representative of the Estate of Z. L. and as a survivor, makes a claim on behalf of the estate for the pain and suffering endured by the decedent prior to her death as a result of the negligence of defendant.

23. Defendant's negligence contributed to the wrongful death of Z. L.

24. As a direct and proximate result of the defendant's negligence, plaintiff, as the heir of the decedent, has sustained both economic and non-economic damages including but not limited to bereavement, mental anguish, pain and suffering, loss of services, loss of income, loss of companionship, loss of guidance and loss of society, and costs for funeral arrangements.

25. As a result of the defendant's wanton conduct, Ms. Lawton is entitled to punitive damages to deter the defendant and others from similar conduct in the future.

WHEREFORE, the plaintiff respectfully prays for a judgment in excess of $75,000 for compensatory and punitive damages plus her costs, and any other and further relief as the Court might deem just or equitable.

Respectfully submitted,

DEPEW GILLEN RATHBUN & MCINTEER LC

/s/Randall K. Rathbun
Randall K. Rathbun #09765
8301 E. 21st St. N., Suite 450
Wichita, KS 67206-2936
Telephone: (316) 262-4000
Fax: (316) 265-3819
Email: randy@depewgillen.com
*Attorneys for Plaintiff*


**DESIGNATION OF PLACE OF TRIAL**

COMES NOW the plaintiff and designates Wichita, Kansas, as the place of the trial of this action.

Respectfully submitted,

DEPEW GILLEN RATHBUN & MCINTEER LC

 s/Randall K. Rathbun
Randall K. Rathbun #09765
*Attorneys for Plaintiff*

7

## REQUEST FOR JURY TRIAL

COMES NOW the plaintiff and respectfully requests a trial by jury with regard to the above-captioned action.

Respectfully submitted,

DEPEW GILLEN RATHBUN & MCINTEER LC


*/s/Randall K. Rathbun*
Randall K. Rathbun #09765
*Attorneys for Plaintiff*