# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LEATHA D. LAWTON, individually and
natural parent of the decedent, Z.L.,

*Plaintiff,*

vs.

Case No. 21-1194-EFM-KGG

PARK VILLAGE COMMUNITY, LLC,
et al.,

*Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Leatha D. Lawton asserts a wrongful death/survivor's claim against Defendants Park Village Community, LLC and Mustang Homes, LLC for the death of her minor daughter.

Defendants have now filed a Motion to Dismiss (Doc. 26) asserting that exculpatory clauses in the lease agreements signed by Plaintiff bar Plaintiff's action as a matter of law. For the reasons stated in more detail below, the Court denies Defendants' motion.

### I.    Factual and Procedural Background

In Plaintiff's Amended Complaint, Plaintiff alleges that she entered into a "Manufactured Home Lease Agreement" ("Home Lease") with Defendant Mustang Homes, LLC ("Mustang") on September 25, 2020, for occupancy of a mobile home. The monthly rent was represented to be $475.00, broken down as $208.33 "rent charge" plus a "depreciation" charge of $266.67. On the

same day, Plaintiff entered into a "Manufactured Home Space Lease Agreement" ("Space Lease") with Defendant Park Village Community, LLC ("Park Village"), which provided Plaintiff with "Home space #321" plus parking on a month-to-month basis for $325.00 per month.

The Home Lease[1] contains the following relevant provisions:

> 1.1 For the *rent* and upon the terms and conditions hereinafter stated, Lessor *leases* to Lessee and Lessee *leases* from Lessor that certain manufactured home more particularly described on Exhibit A attached hereto and made a part hereof (the "Home").
>
> 1.3 Provided Lessee shall not be in default of its obligations under this Lease at the time of exercise or on the commencement date of the applicable renewal term, Lessee shall have the right to renew the term of this Lease for 5 years renewal terms upon the same terms as provided herein, except as to the applicable monthly rent, which will increase as provided in section 2.1, and except that Lessee shall have no further rights of renewal.
>
> 1.4 Lessor and Lessee are parties to a Manufactured Home Space Lease Agreement (the "Space Lease") . . . The Space Lease is incorporated herein.
>
> 2.1 Lessee agrees to pay Lessor . . . a monthly payment of $475.00 . . . The monthly payment consists of monthly depreciation of the home in the amount of $266.67 and a rent charge in the amount of $208.33.
>
> 2.5 The Lessee and Lessor agree that the value of the manufactured home is $48,000.06.
>
> 3.1 The Home shall be used for single family residential purposes only . . .. Lessee shall not remove the Home from the address set forth in Exhibit A without Lessor's prior written consent (which consent may be withheld for any reason or no reason at all), it being understood and acknowledged that *the Home is owned by and is the property of the Lessor*.
>
> 4.1 Lessee accepts the Home in its present condition and as suited for the uses specified herein by Lessee. Lessor or Lessor's agents have made no representations or promises with respect to the Home, or otherwise, except as expressly set forth herein . . .. Lessee accepts possession of the Home on an "AS-IS" basis.

---

[1] Defendants provided copies of the Home Lease, Option Agreement, and Space Lease as exhibits to the Memorandum in Support of their Motion. *See* Docs. 27-2 and 27-1. Plaintiff did not dispute the authenticity of the exhibits in her Response to the Motion.

4.2 Lessee is responsible for all repairs to Home.

6.1 Lessee shall hold Lessor harmless and free from liability because of injury to Lessee and any other person while in or about the Home. Lessee shall indemnify and hold Lessor harmless against all claims for injuries to persons or damage to property arising by reason of the use or occupancy of the home by Lessee including all expenses such as attorneys' fees incurred by Lessor as a result thereof. Nothing herein shall be held to relieve Lessor from the consequences of its own affirmative negligence, intentional wrongful acts or omissions, or those of its agents or employees.

8.1 If (a) Lessee fails to keep or perform any covenant or provision of this Lease (including, but not limited to, payment of rent, maintenance and repair of the Home[)], . . . *Lessor, at its option and in its sole and absolute discretion, may then or at any time thereafter, terminate the Lease and the Lessee shall thereupon at once surrender possession of the Home* to the Lessor and remove all Lessee's effects therefrom . . ..

10.3 Condemnation of all or a substantial portion of the Community shall be sufficient grounds for the unilateral termination of his Lease by Lessor; however, in such event, Lessor shall notify Lessee in writing as required by law. No award for any partial or entire condemnation of the Community shall be apportioned, and the Lessee hereby renounces any interest in any award resulting from a condemnation of all or part of the real property, improvements and business at the Community.

10.4 THE LESSEE HEREBY SPECIFICALLY RELEASES THE RELEASED PARTIES OF AND FROM ANY AND ALL LIABILITIES, DAMAGES, OBLIGATIONS, CLAIMS, ACTIONS, CAUSES OF ACTION, LOSSES, COSTS AND EXPENSES INCURRED OR SUFFERED BY THE RELEASOR OR THE CHILDREN ARISING DIRECTLY OR INDIRECTLY FROM OR AS A RESULT OF THE NEGLIGENCE OF ANY OF THE RELEASED PARTIES.

I HAVE READ RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVENUP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WIHTOUT ANY INDUCEMENT, ASSURANCE OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

10.9 *This Lease shall create the relationship of landlord and tenant between Lessor and Lessee and no estate shall pass out of Lessor*. Lessee has only a usufruct, not

subject to levy and sale and not assignable by Lessee except in accordance with the provisions of Article 7 hereof.[2]

Attached to the Home Lease is an "Option to Purchase Manufactured Home" ("Option Agreement").[3] The Option Agreement is signed by Plaintiff and a representative of Defendant Mustang and is dated the same date as the Home and Space Leases. The Option Agreement contains the following relevant provisions:

> For and in consideration of the payment by Resident to concurrently herewith of the sum of 499.00 (the "Non Refundable Down Amount"), hereby grants to Resident an option to purchase the Manufactured Home described on Exhibit A attached hereto (the "Option"), subject to and upon the terms and conditions set forth below:
>
> (a) The Option shall terminate and be of no further force or effect if Resident's occupancy of the Manufactured Home is terminated as a result of the default by Resident under a certain Manufactured Home Lease Agreement (the "Home Lease") between Mustang Homes LLC, as Lessor, and Leatha Lawton . . ., as Lessee, pursuant to which leases to Resident, and Resident leases from Lessor a certain Manufactured Home.
>
> (b) The Option may be exercised on the following dates . . . provided, however, that to exercise the Option, Resident shall . . . pay to Lessor the sum of One Thousand Five Hundred Dollars ($1500.00) (the "Option Consideration") which shall not be applicable to the Purchase Price.
>
> Purchase Price:
>
> First Exercise Date: The sum of $32,000.04 on 10/01/2025
> Second Exercise Date: The sum of $16,000.02 on 10/01/2030
> Third Exercise Date: The sum of $499.02 on 10/01/2035[4]

---

[2] Doc. 27-2 (emphasis added).

[3] Doc. 27-2, at 11.

[4] Doc. 27-2, at 11-12.

The Space Lease[5] also includes exculpatory language: "Lessee hereby agrees to indemnify and hold Lessor harmless for any injury or death to any person or damage to any property arising out of the use of the Community by Lessee, Lessee's family, agents, employees, guests or invitees."[6]

Defendants have filed a Motion to Dismiss asserting that the exculpatory provisions in the agreements release them from liability such that Plaintiff's Complaint must be dismissed.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7] The court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[8] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[10] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a

---

[5] Doc. 27-1.

[6] Doc. 27-1, at ¶16.

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[10] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

presumption to legal conclusions.[11] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[13] Generally, the Court is constrained by the allegations in the complaint when considering a motion to dismiss. However, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[14]

### III. Analysis

While Defendants argue at length about the enforceability of liability waivers in general under Kansas law, citing cases that do not involve residential leases, the primary issue is whether the Home Lease, with attached Option Agreement, is subject to the provisions of the Kansas Residential Landlord and Tenant Act ("KRLTA").[15] If so, the exculpatory provisions upon which Defendants rely are unenforceable, and their motion fails.

The KRLTA applies to "rental agreements," which are defined as "all agreements, written or oral, and valid rules and regulations adopted under K.S.A. 58-2556 and amendments thereto, embodying the terms and conditions concerning the use and occupancy of a dwelling unit and

---

[11] *Iqbal*, 556 U.S. at 678–79 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[12] *See id.* at 678.

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[14] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (citations omitted).

[15] K.S.A. 58-2540, *et seq*.

premise."[16]  "Dwelling unit" is defined as "a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household; but such term shall not include real property used to accommodate a manufactured home or mobile home, unless such manufactured home or mobile home is rented or leased by the landlord."[17]

The KRLTA provides as follows:

(a) No rental agreement may provide that the tenant or landlord:

(1) Agrees to waive or forego rights or remedies under this act;

(2) Authorizes any person to confess judgment on a claim arising out of the rental agreement;

(3) Agrees to pay either party's attorneys' fees; or

(4) *Agrees to the exculpation or limitation of any liability of either party arising under law or to indemnify either party for that liability or the costs connected therewith*, except that a rental agreement may provide that a tenant agrees to limit the landlord's liability for fire, theft or breakage with respect to common areas of the dwelling unit.

(b) A provision prohibited by subsection (a) included in a rental agreement is unenforceable.  If a landlord deliberately uses a rental agreement containing provisions known by such landlord to be prohibited, the tenant may recover actual damages sustained by such tenant.[18]

The Space Lease appears to be subject to the Mobile Home Parks Residential Landlord and Tenant Act.[19]  That statute also contains a provision prohibiting mobile home lot rental agreements

---

[16] K.S.A. 58-2543(k).

[17] K.S.A. 58-2543(c).

[18] K.S.A. 58-2547 (emphasis added).

[19] K.S.A. 58-25,101, *et seq*.

from including liability waivers.[20] Defendants note that the Space Lease is incorporated by reference in the Home Lease and state that any ruling pertaining to the Home Lease should be equally applicable to the Space Lease.

The KRLTA provides that certain occupancy arrangements are exempt from its terms. Defendants contend that the agreement between Plaintiff and Defendants falls under the "contract of sale" exemption, which states, "Unless created to avoid the application of this act, the following arrangements are not governed by this act: . . . (b) occupancy under a contract of sale of a dwelling unit or the property on which it is a part, if the occupant is the purchaser or a person who succeeds to the purchaser's interest."[21]

Defendants point to the portion of the monthly payment under the Home Lease designated for "depreciation," to the corresponding reduction in the offered sale price for the mobile home after five years, and to the $499 "non refundable down amount" as indications that the arrangement was a contract of sale. Defendants argue that the arrangement vested and transferred some interest and rights in the mobile home to Plaintiff and therefore cannot be a construed as a "pure lease agreement" vesting no interest in the home to Plaintiff. Consequently, the argument goes, the Home Lease and Option Agreement must be a "contract of sale."

"Contract of sale" is not defined by the statute and has not been considered by Kansas courts in the context of the KRLTA. However, the KRLTA is based on the Uniform Residential Landlord and Tenant Act ("URLTA"). The Comment to the applicable section of the URLTA explains that "[t]his Act does not apply to occupancy by a purchaser under a contract of sale. *This*

---

[20] *See* K.S.A. 58-25,106.

[21] K.S.A. 58-2541(b).

*Act applies to occupancy by the holder of an option to purchase*, as distinguished from a contract of sale."[22]

Kansas courts have examined the distinction between an option to purchase and a contract of sale in contexts other than the KRLTA. In *Loose v. Brubacher*,[23] the Kansas Supreme Court explained that an option to purchase is not a contract until it is accepted by the optionee; until then, "it is only a continuing offer to sell and covey at the price and upon the conditions specified. The optioner is bound to keep the offer open and available in accordance with its terms, but its acceptance rests within the discretion of the optionee."[24] In *Matter of Hills' Estate*,[25] the Kansas Supreme Court found an executory contract of sale rather than an option agreement where the agreement stated the sellers agreed to sell the land to the purchasers, the buyers then paid one-fourth of the agreed purchase price before taking possession of the land, and a deed was executed and placed in escrow beyond control of the sellers until the remainder of the purchase price was paid.[26] This aligns with the court's discussion of characteristics of a contract of sale in *Hall v. Pioneer Crop Care, Inc.*:[27] the transaction contains a stipulation for the subsequent performance of specified acts by each party; upon performance of those acts, the contract is placed in escrow;

---

[22] Cmt., Unif. Res. Land. & Ten. Act § 1.202 (1972) (emphasis added).

[23] 219 Kan. 727, 549 P.2d 991 (1976).

[24] *Id*. at 996.

[25] 222 Kan. 231, 564 P.2d 462 (1977).

[26] *Id*. at 470.

[27] 212 Kan. 554, 512 P.2d 491 (1973).

the grantor then executes and delivers a deed, which is also held in escrow and delivered to the grantee when payment is made.[28]

Two other states that have adopted the portion of the URLTA including the "contract of sale" exception have similarly distinguished between contracts of sale and option agreements under that exception. In *Brigdon v. Lamb*,[29] the issue was whether a contingency included in an agreement to purchase a house rendered the agreement an option to buy and subject to the URLTA rather than a contract of sale. The Alaska Supreme Court found that the agreement was not an option to buy because both parties had agreed to the terms of the sale and the potential buyers were obligated to complete the transaction if the contingency was met, whereas "[a]n option contract places no obligation to purchase on the holder of the option."[30]

The Indiana Supreme Court has also considered the URLTA's contract of sale exemption. In *Rainbow Realty Grp., Inc. v. Carter*,[31] the Carters entered into an agreement with Rainbow Realty titled a "Purchase Agreement (Rent to Buy Agreement)." Attachments to the agreement included a separate declaration, a truth-in-lending disclosure, and a residential real-estate disclosure. The Carters agreed that they were acquiring the house "as is," that the house was not in a livable condition, that Rainbow was providing no warranties of habitability, that the Carters would have to make or pay for any repairs themselves, and that Rainbow could "evict" them or failing to make payments on time. The agreement said that the parties' intent was to consummate

---

[28] *Id.* at 496.

[29] 929 P.2d 1274 (Alaska 1997).

[30] *Id.* at 1277, citing *see* Eric M. Holmes & Joseph M. Perillo, 3 *Corbin on Contracts* § 11.1 (revised ed. 1996).

[31] 131 N.E.3d 168 (Ind. 2019).

a sale of the house, with the Carters to make monthly payments of $549 for thirty years.  However, the first 24 payments were termed "rental payments."  After the first 24 payments were made, the agreement provided that the parties would execute a separate sales contract for the remaining 28 years.[32]

Rainbow argued that the agreement qualified as a "contract of sale" and was exempt from the URLTA.  According to Rainbow, the 24 rental payments were not payments for using the house but were "amortized payments of principal and interest which were credited toward the purchase price in the land sales contract."[33]  The court rejected Rainbow's argument, finding that during the agreement's 24-month term, Rainbow reserved a landlord's prerogative to enter the premises, restricted the Carters' use of the land, and, upon their default, evicted them as if they were tenants and kept their payments.[34]  "These features, taken together, are particular to a residential lease.  Thus, the parties' Agreement—a purported rent-to-buy contract—is not a 'contract of sale of a rental unit' and thus is not exempt from the Statutes' coverage."[35]

Under these cases, the arrangement between Plaintiff and Defendants does not qualify as a contract of sale.  The arrangement contains an offer to sell the mobile home after five years for a certain price, but acceptance of the offer was within Plaintiff's discretion.  Plaintiff did not agree to purchase the mobile home, and the title to the home was not held in escrow pending payment

---

[32] *Id*. at 171.

[33] *Id*. at 173.

[34] *Id*. at 174.

[35] *Id*.

of the full purchase price. Defendants could reenter the premises and evict Plaintiff if she defaulted, keeping all payments she had made.

Defendants' argument that the arrangement vested and transferred some interest and rights in the mobile home to Plaintiff and therefore cannot be a construed as a "pure lease agreement" subject to the KRLTA is not persuasive. First, the Court rejects the premise that the KRLTA only applies to "pure lease agreements." As outlined above, the KRLTA applies to "rental agreements," which is defined broadly to encompass all agreements concerning the use and occupancy of a dwelling unit. Moreover, the fact that a lease agreement is not "pure" does not necessarily mean that it must be considered a "contract of sale" and exempted from the KRLTA. As discussed in the cases above, an option to buy does not equate to a contract of sale.

Second, the Court disagrees with Defendants' contention that the Home Lease and Option Agreement transferred anything more than a leasehold interest in the mobile home to Plaintiff. The Option Agreement does state that Defendant Mustang granted Plaintiff an option to purchase the mobile home in return for $499, characterized as a "non refundable down amount." However, elsewhere the Option Agreement says that Plaintiff must pay another $1,500 not applicable to the purchase price to "exercise" that option. Further, the Home Lease states that the security deposit is $0.00, indicating that the $499 was in effect a non-refundable deposit, which is prohibited by the KRLTA.[36] Defendants also point to the description of Plaintiffs' monthly payment of $475.00 as $208.33 "rent charge" and $266.67 "depreciation" charge. They argue that the depreciation charge lowered Plaintiff's purchase price and "vested plaintiff with an ownership interest of $266.67 per month with each payment made." Yet, the Home Lease provides that Plaintiff has no

---

[36] *See* K.S.A. 58-2550(b).

interest in the mobile home in the event of condemnation and specifically states, "*This Lease shall create the relationship of landlord and tenant between Lessor and Lessee and no estate shall pass out of Lessor.*" Moreover, if Plaintiff failed to make the monthly payment, Defendants could evict her with no return of her accumulated depreciation payments.

In *Fourth National Bank in Wichita v. Hill*,[37] the Kansas Supreme Court found that a lessee under a lease with an option to purchase had no interest in the property beyond his leasehold interest based on the following factors: (1) the lessee was not obligated to purchase the property; (2) there was no completed contract of sale on which the lessor could have obtained specific performance against the lessee; (3) all payments made by the lessee were paid as rent, not purchase money; and (4) the option was never exercised.[38] With the possible exception of the "depreciation" portion of the monthly payments, all of the factors are present here. Defendants' argument that the Home Lease and Option Agreement transferred enough interest in the mobile home to Plaintiff to remove her from the protections of the KRLTA fails.

Defendants cite *Koerner v. Custom Components, Inc.*,[39] as supporting their argument that the Home Lease and Option Agreement were a contract of sale. *Koerner* involved a commercial lease with an option to purchase, which the defendant lessee argued was a conditional sale contract. The Kansas Court of Appeals considered several factors in determining that the agreement at issue was a lease with an option to purchase rather than a sale: the agreement used the terms "lease" and "rent"; title was neither placed in escrow nor transferred to the lessee; the lessee made no down

---

[37] 181 Kan. 683, 314 P.2d 312 (1957).

[38] *Id.* at 321.

[39] 4 Kan. App. 2d 113, 603 P.2d 628 (1979).

payment; the contract contained a provision that in the event the premises were appropriated by eminent domain, the contract was terminated and the lessor would have the exclusive right to recover from the condemning authority; the contract provided that upon default or abandonment by the tenant, the lessor could enter and relet the premises; the contract gave the lessor the right to post "for rent" signs and show the premises during the last 6 months of the lease term; the contract gave the tenant the right to renew for another term on the same terms and conditions, except that the rental payments would be renegotiated.[40]

Virtually all of the same factors are present here: the Home Lease is called a "lease" and Plaintiff paid "rent"; title to the mobile home was not placed in escrow or transferred to Plaintiff; Plaintiff made no clear down payment on the mobile home; Plaintiff was entitled to nothing if the mobile home premises were taken through eminent domain; and upon default or abandonment, Plaintiff received nothing and Defendants could enter and relet.  In addition, the Home Lease specifically states that it creates the relationship of landlord and tenant between the parties and that "no estate shall pass out of Lessor."  Finally, Plaintiff was not obligated to buy the mobile home under the Home Lease and Option Agreement; the agreements did not provide a basis for Defendants to obtain specific performance forcing Plaintiff to purchase the mobile home.  The Home Lease and Option Agreement are a lease with an option to buy, not a contract of sale.

The Court finds that the Home Lease with the Option Agreement is a "rental agreement" rather than a "contract of sale."  Therefore, the KRLTA applies, and the exculpatory language contained in the Home Lease and the Space Lease is unenforceable under K.S.A. 58-2547.

Accordingly, Defendants' motion is denied.

---

[40] *Id*. at 634.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 26) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Oral Argument (Doc. 37) on Defendants' Motion to Dismiss is **denied** as the Court finds argument is unnecessary.

**IT IS SO ORDERED**.

Dated this 18th day of March, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE