IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEATHA D. LAWTON,<br>*individually and natural parent*<br>*of the decedent Z.L.*,<br><br>*Plaintiff*,<br><br>v<br><br>PARK VILLAGE COMMUNITY,<br>LLC, and MUSTANG<br>HOMES, LLC,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 21-1194-EFM<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM and ORDER**

Plaintiff Leatha D. Lawton brought wrongful a death/survivor's claim against Defendants Park Village Community, LLC and Mustang Homes, LLC. for the death of her minor daughter, Z.L. The case was mediated and settled. Z.L. had two heirs under Kansas law: her mother, Plaintiff Leatha D. Lawton, and her father Edwin L. Cluke, Jr.[1] Plaintiff Lawton moved for an order of apportionment and disbursement of the settlement proceeds between the heirs at law, seeking full apportionment to her benefit.

Plaintiff's motion correctly notes that the wrongful death claim was brought pursuant to the Kansas Wrongful Death Act, K.S.A. § § 60-1901 et seq.[2] That Act provides in relevant part:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys fees to the attorneys for the plaintiffs . . . shall be

---

[1] Z.L.'s birth certificate lists no father, but that portion of the form was left blank. However, the parties all conceded that there was no dispute that Cluke was the natural father.

[2] Her motion also correctly notes that the method of distributing the amount recovered in a wrongful death action depends upon the law of the state which created the cause of action, citing *Kent v. Kansas Power and Light Co.*, 123 F. Supp. 662, 664 (D. Kan. 1954).

apportioned by the judge upon a hearing . . . .  The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action . . . .[3]

Plaintiff's motion (Doc. 50)[4] asserted that Cluke was "an absentee father to Z.L; that he did not see Z.L. until three years after she was born, that he refused to pay child support, that he saw her at most 8 times during her life, that he never gave her Christmas or birthday presents, and that Cluke was married and had other children and Z.L. has never been a part of Cluke's life.  The motion asserted that funeral costs for Z.L. were $15,874, some costs of which arose from things Cluke requested, but that "true to form he never paid one cent for funeral costs." The motion further asserted that Plaintiff Lawton was still paying the expenses of Z.L.'s last treatment at the hospital."

The matter was set for hearing before this Court on July 25, 2022.  On July 12, 2022, the same day that the Court set the hearing, Plaintiff provide notice to Cluke of the hearing set for settlement approval and apportionment.  Prior to the hearing, Cluke did not enter an appearance in this matter nor provide the Court or parties with any briefing or exhibits.

At the scheduled hearing, Plaintiff appeared along with her counsel of record Randall Rathbun of Depew, Gillen, Rathbun and McInteer, LC.  Defendants appeared by counsel of record Danielle Uzelac of Franke Schultz & Mullen, P.C.[5]  Edwin Dluke, Jr. appeared pro se.

---

[3] K.S.A. § 60-1905.

[4] For reasons not entirely clear to the Court, while this motion was submitted to the Court in advance of the hearing, on or about July 20, 2022, it was not filed in this case until July 26, the day after the hearing.  Furthermore, the filing contained several redactions, for which Court approval was neither sought nor obtained.  Some of the redactions are customary (such as Z.L.'s date of birth), but others are a bit more problematic.  The Settlement Agreement between the parties recites that the amount of the settlement is confidential, but it is difficult to issue an Order apportioning the settlement amount without in some way discussing that amount. This Order will reference, directly or indirectly, some of those redacted matters, as they are indispensable to the resolution of the motion.

[5] Defendants' attorney admitted that she had no position regarding the subject matter of the hearing—apportionment--and though present throughout the hearing, did not participate in examining witnesses or making argument.

2

Plaintiff Lawton testified under oath at the hearing. She testified that she and Cluke were never married. That he left her when she was 4 months pregnant. That after the birth she reached out to him for help and received nothing; that she also reached out to his parents for help and got nothing. That he did not see Z.L. until 2010 she was three years old, and only then when Lawton brought Z.L. over to him; and that after just one hour he asked Lawton to come back and get Z.L. That he did not see her again until 2018 when Cluke's sister had Z.L., and that his time with her then was less than an hour. Lawton further testified that thereafter, Cluke only saw Z.L. for 3 minutes while she was walking home from school in 2019, that in 2020 he saw her twice to introduce here to her (half) siblings, and that he saw Z.L. while she was in the hospital. In summation, Lawton testified that during Z.L.'s life, Cluke only saw her 2 days, 1 night, 2 hours, and 3 minutes. Lawton also testified that Z.L. sent a Facebook message to Cluke (a screenshot of which was introduced as an exhibit) that stated: "Do u even like me u never comma round u had never watch me grow and you let me down." (sic). Lawton also testified, consistent with contentions in her motion, that she had asked Cluke to pay his half of the funeral costs but he had not done so.

Upon questions from the Court, Lawton acknowledged that she had not been required to pay any medical expenses relating to the final treatment of Z.L., but that all unpaid medical expenses had been written off. The Court was also provided documents showing that total funeral costs were $5,533.

Cluke, appearing pro se, declined the Court's invitation to cross examine Lawton, but testified in his own behalf. His testimony largely consisted of reading a statement he had prepared which generally denied Lawton's allegations that he was an absentee father. He asserted that he was absent from the house but not from his daughter's life. He asserted that he had a great

3

relationship with Z.L., supported her financially and emotionally, and spoke to her on the phone when she called for advice. He noted that Z.L. went to school with his other children, and visited him on weekends. With emotion, he argued that he took his responsibility as a father quite seriously. He testified that he was present with her in the hospital and helped with her prescription costs. He testified that he had provided required child support payments. Cluke testified that all funeral costs and expenses were paid in full by donations through Go Fund Me, and neither Lawton nor he had to assume any costs of their own. However, he testified that Lawton presented him with what he described as falsified documents claiming that total funeral costs were over $15,000, and that he owed her over $6,000 for his half, and that she had spent another $5,600 for a headstone although no headstone existed at the grave. At the conclusion of his statement, Cluke requested 40% of the settlement.

Cluke's statement referenced exhibits, and when the Court requested them he provided several photos and a court document referencing his child support payments, as well as the documents regarding funeral costs which he claimed were falsified by Lawton. Because Lawton's attorney had not seen these documents before, a recess was taken to give him time to review them.

After the recess, Lawton's attorney cross examined Cluke. Cluke admitted that he himself was in very few of the pictures; they were mostly of Z.L. and of Cluke's other children. He testified that he had never seen the Facebook message from Z.L. to him that Lawton had introduced as an exhibit, and in response to questioning denied blocking Z.L. from that media. He admitted that he paid little child support between December 1 of 2018 and November 1 of 2019. He claimed that he began paying child support the year after she was born, in 2008. He denied that he did not see Z.L until she was three years old, stating he first saw her when she was three months old.

Following cross examination by Lawton's attorney, the Court inquired of Cluke. He had presented several photos that he claimed to have gathered in the short time he had between being notified of the hearing and the hearing itself. Although he was not in many of the photos, he claimed to have taken most of them (the photos of Z.L. and his children walking home from school were taken by his other children). He identified photos of Z.L. and his other children at an overnight they all had at a hotel for fun, approximately a year before Z.L. died. He identified photos of Z.L. walking home from school which his other children. He identified photos of his other children with Z.L. at Lawton's house, at his house on a different date, and at a studio apartment he had on yet another date. He identified photos of himself and Z.L. at the hospital on more than one occasion. He claimed she was at his house two or there times a month, on weekends, and spent the night there two times a month. He denied that he never bought her birthday or Christmas presents, claiming that after the first couple of years of her life he did so every year. And he claimed that child support payments for her were automatically deducted from his paycheck every place he worked, except when he was between jobs. He did not recall receiving the Facebook message introduced as Plaintiff' exhibit, and did not know why Z.L. would say that, claiming they had a great relationship and she called him often.

Having considered all of this evidence, the Court cannot find with any certainty what the degree of Cluke's relationship with his daughter was, particularly during her early years. The Court notes that although Cluke provided numerous photos, they only accounted for five or six occasions, and they were mostly during times when Z.L. was older, although the Court acknowledges that Cluke said he did not have sufficient time after notification of the hearing to find many photos. The Court does find that Cluke made child support payments (through state ordered payroll deductions) for Z.L. regularly, except for the time period noted on cross

examination.[6]  That time period may have been during his unemployment, but the Court lacks sufficient information to make that conclusion.

But while the Court cannot find with certainty how much time Cluke spent with Z.L. throughout her life, it can find that the testimony from Lawton (both in her motion and from the witness stand) was frankly not believable.  Clearly, at least in the later years of Z.L.'s young life, she had some contact with her father beyond the very minimal amount Lawton testified.  Clearly her testimony that he never paid child support was false.  Clearly the statement of funeral expenses which Cluke produced as having been sent to him by Lawton to demand $6,000 as his share was false and fraudulent.  Moreover, Lawton did not attempt to challenge on cross examination Cluke's testimony that all funeral expense were paid by money raised through Go Fund Me so that neither Lawton nor Cluke had to pay any of them, and the Court finds his testimony in that regard credible. Lawton's motion asserted that she was "still paying the expenses of Z.L.'s last treatment at Wesley [Medical Center].  Cluke has not offered to help with payment of these bills."[7]  But under oath at the hearing she admitted that all medical expenses had been written off, so this statement was false.

Prehearing, it appeared that Plaintiff did not expect Cluke to appear at the hearing (although notice to him, was duly given as required by law), and in light of these numerous false statements or assertions by Plaintiff the Court is left wondering if Lawton, expecting no one to challenge her assertions, thought she could say anything.

Therefore, the Court finds that Cluke's testimony was largely credible (although again noting that it focused on the later years of Z.L.'s life, and not her earlier years).  Further, the Court

---

[6] Plaintiff's counsel argued in closing in support of Lawton's testimony that Cluke gave her no support; that these payments were things he had to pay to the state, and that it didn't come from him.  Of course, that is how most court-ordered child support payments work.  This assertion the Court need not dignify with a response.

[7] Motion for Order of Apportionment, Doc. 50, p. 4 at paragraph 13.

finds that Lawton's testimony was not credible, was replete with obvious falsehoods, and therefore rejects it in full. However, the Court nevertheless finds that Lawton was Z.L.'s primary caretaker and custodian, and that whatever time Cluke spent with Z.L. was clearly less than the time that Lawton spent with her.

The Court finds that the settlement entered into by the parties to this action was fair and reasonable and approves the settlement. Likewise, the Court finds that the contingency fee agreement between plaintiff and counsel of thirty-five percent after expenses is fair and reasonable and approves the same.

Plaintiff has presented the Court with a statement of expenses for the filing fee, expenses for medical records, and mediation costs. As noted, no medical or funeral expenses were paid by plaintiff and need to be deducted from the settlement. Accordingly, after deducting these total expenses from the gross settlement amount, a net settlement after expenses of $298,604.87 remains. The thirty-five percent attorney contingence fee applied to this amount yields an attorney fee of $104,511.70. Because Plaintiff's counsel prepaid the above noted expenses from this case, counsel is entitled to a total payment and reimbursement of the attorney's fees and prepaid expenses and the Court approves the same.

Thus, the Court is called upon to apportion the net recovery of the settlement, $194,093.17, among Z.L.'s heirs. The Court finds that the only heirs of Z.L. under Kansas law are Plaintiff Leatha Lawton, the mother, and Edwin L. Cluke, Jr., the father.

After careful consideration of the evidence and the Court's findings from that evidence, and in recognition that, despite Lawton's testimony which the Court has found to not be believable, Lawton did have more contact with Z.L. than did Cluke, and the Court orders that 2/3 of the net settlement, or $129,395.45 should be apportioned to the Plaintiff, Z.L.'s mother Plaintiff Leatha

Lawton, and 1/3 of the net settlement, or $64,697.72 should be apportioned to Z.L.'s father Edwin Cluke, Jr.

Pursuant to the settlement agreement entered in this matter, the full settlement proceeds were to be paid into the Depew & Gillen Trust Account. Payment from that account of amounts consistent with this Order, once the settlement proceeds are received, is hereby authorized and ordered.

IT IS THEREFORE ORDERED that Plaintiff Leatha Lawton shall receive 2/3 of the net settlement, or $129,395.45 and Z.L.'s father, Edwin Cluke, Jr. shall receive 1/3 of the net settlement, or $64,697.72.

IT IS FURTHER ORDERED that full settlement proceeds will be paid into the Depew & Gillen Trust Account and will be apportioned consistent with this Order once the proceeds are received.

IT IS SO ORDERED.

Dated this 27th day of July, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE